IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGG ROMAN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 13-1748 |
| | ) | United States Magistrate Judge |
| UNIGROUP WORLDWIDE, INC., | ) | Cynthia Reed Eddy |
| doing business as | ) | |
| UNIGROUP WORLDWIDE UTS, | ) | |
| SONIGO INTERNATIONAL SHIPPING | ) | |
| PACKING & MOVING, LTD, | ) | |
| BESTGUY MOVING SERVICES, | ) | |
| ATLAS INSURANCES, LTD | ) | |
|     Defendants. | ) | |

**I.     Recommendation**

For the reasons set forth below, I recommend that Atlas Insurances, LTD's motion to dismiss the claims against it in Counts IV, V and VI of the complaint be denied.

**II.    Report**

**A.   The State Court Complaint**

**The Parties.** On October 25, 2013, Greg Roman, an individual residing in Pittsburgh Pennsylvania, filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging breach of service contracts, breach of insurance contract and related causes of action arising out of property loss caused by Hurricane Sandy on or about October 29, 2012. Plaintiff's furniture and family household goods had been shipped from Israel to Pittsburgh, under service and insurance contracts with Defendants, and was in the Port of New York when Hurricane Sandy made landfall. Notice of Removal, Complaint, Exhibit A (ECF No. 1-2).

The Defendants are as follows: UniGroup Worldwide, Inc., d/b/a UniGroup Worldwide UTS ("UniGroup"), a global transportation company with its principle place of business in Missouri; Sonigo International Shipping Packing & Moving, LTD ("Sonigo"), an international shipping company specializing in household and commercial packing and shipping services with its principle place of business in Israel, and a member and partner of UniGroup; BestGuy Moving Services ("BestGuy"), a local, interstate, and international moving services company with its principle place of business in New Jersey; and Atlas Insurances, LTD ("Atlas"), an insurance company specializing in marine insurance with its principle place of business in Israel. *Id*. at ¶¶ 2-5.

**The Facts Averred.** After the Jewish Federation of Greater Pittsburgh hired Mr. Roman in 2012, he contracted with Sonigo to relocate his family's household property from Israel to Pittsburgh, Pennsylvania. Sonigo was to provide transportation of the property, obtain international shipping coverage, assist with custom clearance, assist in completing necessary paperwork prior to departure, deliver and unload the property, and remove all debris and unwanted materials after delivery. *Id*. at ¶¶ 9, 21, 24, 43.

Plaintiff and Sonigo communicated and transmitted a number of forms and documents through Mr. Roman's private e-mail account. These included Sonigo's proposal, documents required by customs, an invoice, and Atlas' Application and Inventory form. Plaintiff alleges that he completed and returned that form to Sonigo by e-mail, on the same day that he received them, October 2, 2012.[1] Sonigo, however, claims that it did not receive the form at that time, but it did not attempt to notify Plaintiff directly. Instead Sonigo sent e-mails for Mr. Roman to the Jewish

---

[1] Plaintiff maintains that the Application and Inventory form was dated October 2, 2012, and that the metadata and electronic PDF information demonstrate that it was filled out on that date. Complaint at ¶¶ 68-69 (ECF No. 1-2). The form was not attached to the state court complaint removed to this Court.

Federation of Greater Pittsburgh. Mr. Roman avers he did not learn until October 21 that Sonigo had not received the insurance application forms. On October 24, Plaintiff received an invoice that did not contain a charge for shipping insurance, and on October 29, received a corrected invoice containing the insurance charge. On that day, October 29, Mr. Roman sent a payment of $9,645 to Sonigo, along with Atlas' Application and Inventory form he alleges he previously submitted on October 2. *Id*. at ¶¶ 32-36, 38-41.

Plaintiff alleges that BestGuy, an agent for Sonigo in the United States who was authorized to take delivery at the port and transport the property to Pittsburgh, further damaged the property by opening the container boxes at the Port of New York and delaying the United States Cargo Terminal Surveyor's inspection of the materials. Plaintiff also claims BestGuy recklessly unloaded the property in Pittsburgh, damaged the family property and home, and did not clean up the debris and unwanted materials, as required by the contract. *Id*. at ¶¶ 44-50, 52.

Mr. Roman discovered the damage after delivery of the household furniture and goods, and notified Sonigo who notified Atlas. Atlas sent an adjuster to inspect the damage, who determined that Mr. Roman's claim amounted to $53,643.07. *Id*. at ¶¶ 53, 55-56.

Atlas ultimately denied the claim and accused Mr. Roman of attempting to procure the insurance in bad faith because he had submitted the application knowing Hurricane Sandy's landfall was imminent. *Id*. at ¶¶ 58-66.

**The Claims.** Based on the foregoing, Plaintiff states the following claims.

**Count I:** Breach of Contract against Sonigo/UniGroup UTS.

Plaintiff alleges Sonigo breached its obligations under the contract by failing to notify him that any necessary paperwork needed to secure insurance was incomplete. The contract obligated Sonigo to assist Plaintiff in completing all necessary paperwork prior to shipping,

provide international shipping insurance coverage, and provide paperwork to secure the insurance. Mr. Roman maintains that he satisfied all conditions precedent to the contract, but Sonigo failed to uphold its end of the contract, resulting in harm to Plaintiff including Atlas' denial of his insurance claim. *Id*. at ¶¶ 75-83.

**Count II:** Breach of Implied Duty of Good Faith against Sonigo/UniGroup UTS.

Plaintiff alleges Sonigo breached the implied covenant of good faith and fair dealing by failing to properly assist Plaintiff with the insurance application, resulting in harm when Atlas denied his claim. *Id*. at ¶¶ 84-87.

**Count III:** Breach of Contract - Improper Delivery against Sonigo/UniGroup UTS/BestGuy.

Plaintiff alleges Sonigo and its agent, BestGuy, breached the contract by failing to properly deliver the property and by refusing to remove the debris and unwanted materials when unloading the property at the final destination. Plaintiff alleges damages in the form of loss of the benefit of his bargain. *Id*. at ¶¶ 88-95.

**Count IV:** Breach of Contract against Atlas.

Plaintiff alleges Atlas breached its obligation under the contract by refusing to cover the personal property damage after he had satisfied all conditions precedent to recovery and notified Atlas of the claim. Plaintiff also alleges that Atlas has falsely accused him of bad faith in submitting the insurance application, which also constitutes a material breach of contract. *Id*. at ¶¶ 96-103.

**Count V**: Statutory Bad Faith against Atlas.

Plaintiff alleges Atlas, by refusing to cover his damages, violated the Pennsylvania Bad Faith statute, 42 Pa.Cons.Stat. § 8371, the Pennsylvania Unfair Insurance Practices Act, 40 P.S. §

1171.5(a), and Pennsylvania Unfair Insurance Practices Regulations, 31 Pa. Code § 146, et seq. *Id*. at ¶¶ 104-122.

**Count VI**: Common Law Breach of the Duty of Good Faith against Atlas.

Plaintiff alleges Atlas unreasonably refused to settle a claim by not investigating, adjusting, and paying the losses related to the claim promptly and, therefore, breached its contractual duty to act in good faith, resulting in foreseeable consequential losses. *Id*. at ¶¶ 123-126.

### B. Notice of Removal

Defendant UniGroup filed its Notice of Removal on December 6, 2013, pursuant to 28 U.S.C. § 1446. (ECF No. 1). UniGroup claimed three bases for federal court jurisdiction: (1) under 28 U.S.C. § 1332, diversity of citizenship, as the parties are diverse and the amount in controversy exceeds $75,000; (2) federal question jurisdiction under 28 U.S.C. § 1331 and the General Maritime Law of the United States; and (3) federal question jurisdiction under 49 U.S.C. §14706, governing interstate shipment of goods. Notice of Removal, (ECF No. 1), at ¶¶ 2-8, 17, 23-24. The other defendants consented to the removal of Plaintiff's state court action to federal court. (ECF No. 1-3, 1-4, 1-5)

### C. Atlas' Motion to Dismiss (ECF No. 19)

Atlas moves the Court to dismiss Counts IV, V, and VI of the complaint for failure to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 12(b)(6), or in the alternative, under Rules 12(b)(1) and 12(b)(3) for lack of jurisdiction and improper venue, respectively. Atlas argues that the insurance contract contains a forum selection clause designating Israel as the exclusive forum for resolving disputes arising therefrom, and a governing law clause requiring application of British law. Atlas attaches to its Brief in Support of

the Motion to Dismiss certain documents it identifies as integral to the insurance policy, specifically, Exhibits B, D and E.[2] Brief in Support of Motion to Dismiss. (ECF No. 20-1 – 20-5). Exhibit B purports to be "Agent Instructions," which, Atlas asserts, indicate that Mr. Roman did not wish to obtain additional insurance on his shipment. (ECF No. 20-2). Exhibits D and E appear to be Confirmations of Insurance, but "Special Conditions" terms set forth in the respective Confirmations are inconsistent with each other. (ECF Nos. 20-4 and 20-5).

Atlas requests that the Court dismiss the claims against it pursuant to the forum selection clause. On the merits of his claim, Atlas argues Plaintiff cannot state a claim because he violated the affirmative duty of disclosure of known risks imposed by Britain's Marine Insurance Act 1906 (8 Edw. 7 c. 41) when he submitted his application for insurance without informing Atlas of a material fact: the impending landfall of Hurricane Sandy.

In its briefs, Atlas argues only the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), based on the forum selection and governing law clauses of the insurance contract, but makes no legal argument or analysis of the facts that might support dismissal for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1), or for improper venue under Fed.R.Civ.P. 12(b)(3). Accordingly, the Court deems these grounds for dismissal to have been abandoned.

The Court notes, however, that the Western District of Pennsylvania certainly appears to be a proper forum for the federal lawsuit under 28 U.S.C. § 1391(b)(2), and undoubtedly has federal question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332. Although a valid forum selection clause may compel a federal district court to dismiss a case if it finds that the parties contractually agreed to submit their disputes to another forum, the existence of a forum

---

[2] In its brief, Atlas also references exhibits from the complaint; however, there were no exhibits attached to the state court complaint removed to this Court. *See* Notice of Removal, Complaint (ECF No. 1-2). If in fact the state court complaint attached exhibits, it was incumbent on the removing defendants to include copies with the Notice of Removal. 28 U.S.C. 1446(a).

selection clause does not, in the first instance, deprive the federal court of jurisdiction to make that determination. S*ee, e.g., M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972) (contract clause providing that any dispute arising out of contract must be treated before London Court of Justice did not "oust" federal district court of jurisdiction over suit in admiralty for damages alleging negligent towage and breach of contract; court had jurisdiction to give effect to clause); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995) (in "federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."). Moreover, Atlas consented to removal of the state court action to this Court on the basis of federal question and diversity jurisdiction and cannot be heard now to contradict its consent.

Plaintiff contests the existence of a forum selection clause naming Israel as the exclusive forum for disputes arising from the contract of insurance, because he did not execute any documents making such a selection. Accordingly, Plaintiff argues that such a provision would materially alter the insurance contract. Plaintiff further asserts that if the Court finds a forum selection clause is part of the contract, it is unreasonable, unconscionable and unenforceable. Plaintiff also argues that the "suggest[ion] that this Court lacks subject matter jurisdiction over this matter is a complete contradiction of prior Atlas assertions" implicit in its consent to removal of the state action to federal court. Finally, Plaintiff argues that because the motion to dismiss relies on materials outside of the complaint, it must be converted to one for summary judgment, and the Court should deny it or grant him the opportunity to engage in discovery pursuant to Fed.R.Civ.P. 56(d).

## D. Rule 12(b)(6) Scope and Standard of Review

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id.*

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ⸻ U.S., ⸻ 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

When ruling on a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," courts generally do not consider materials outside the pleadings, but only the allegations of the complaint, attached exhibits, and matters of public record. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 559–60 (3d Cir. 2002). Factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents. *Id.* Documents referred to in a complaint which are central to the claim are considered part of the pleading, even if not attached to the complaint. *Pryor*, 288 F.3d at 559-60. A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004)). *See also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 n.1 (3d Cir. 2002) (as plaintiff alleges breach of an agreement, the agreement is "a document integral to or explicitly relied upon in the complaint [and] may be considered without converting the motion to dismiss into one for summary judgment").

A court may also take judicial notice of public records and proceedings in other courts that relate to matters at issue. *See Grynberg v. Total Compagnie Francaise Des Petroles*, 891

F.Supp.2d 663, 675 (D.Del. 2012) (citing *M & M Stone Co. v. Pa. Dep't of Envt'l Prot.,* 388 F.App'x 156, 162 (3d Cir. 2010)). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004).

When a motion to dismiss pursuant to Rule 12(b)(6) or for judgment on the pleadings pursuant to Rule 12(c) references documents outside the pleadings, the court may convert such motion into a Rule 56 motion for summary judgment, pursuant to Rule 12(d).[3] A court has complete discretion to determine whether or not to accept material beyond the pleadings in connection with a Rule 12(b)(6) motion. *Pryor*, 288 F.3d at 559.[4] When either or both parties present extraneous material as part of a motion or response in opposition, the court has the discretion to accept the extraneous material and convert the Rule 12(b)(6) motion to one for summary judgment pursuant to Fed.R.Civ.P. 56, or decide it without the additional material pursuant to Fed.R.Civ.P. 12(b). *Rose v. Bartle*, 871 F.2d 331, 339–40 (3d Cir. 1989). *See also Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (district court not required to accept the matters outside the pleadings; rather, it has discretion to confine its ruling to the complaint and the motion to dismiss). *Compare In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (district court should not have considered information from brief supporting motion to dismiss, which information did not qualify as a "document integral to or explicitly relied upon in the complaint"), *with AstraZeneca Pharma. LP v. Apotex Corp.,* 669 F.3d 1370,

---

[3] Rule 12(d), Result of Presenting Matters Outside the Pleadings, provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

[4] Despite this discretion, the court is precluded from converting a Rule 12(b)(6) motion into a Rule 56 motion when it finds that there exists a genuine issue of material fact. *See Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D.Pa. 1984) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 894, 891 (3d Cir. 1977)).

1378, n.5 (Fed.Cir. 2012) (district court committed no error in relying on documents beyond the pleadings, without permitting discovery, in ruling on generic-pharmaceutical manufacturers' motions to dismiss patentees' claims in patent infringement action, which attached abbreviated new drug applications and proposed drug labeling referenced by patentees' complaint, and authenticity of documents was undisputed).

The "types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based,'" but lengthy exhibits containing evidentiary matter and affidavits of fact will not ordinarily be considered without converting the motion to dismiss to one for summary judgment. *Rose*, 871 F.2d at 339 n.3 (quoting *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir. 1969) and 5 C.Wright & A.Miller, *Federal Practice and Procedure* § 1327, at 489–91). *Compare Pagan v. New Wilson's Meats, Inc.*, 2008 WL 3874720, *4 (E.D.Pa. 2008) (court declines to consider affidavits attached to motion to dismiss pursuant to Rule 12(b)(6)) *with Uni-Marts, LLC v. NRC Realty Advisors, LLC*, 426 B.R. 77, 82 (Bankr. Del. 2010) (court's consideration of copy of agency agreement attached to agent's motion to dismiss would not convert motion to one for summary judgment, where debtor's claims for breach of contract, declaratory relief, and dissolution of agreement were based on agreement and copy of agreement was indisputably authentic).

If "matters outside the pleadings are presented to the district court on a motion under Rules 12(b)(6) or 12(c), and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." *Kulwicki*, 969 F.2d at 1462 (citations omitted). In that event, the court must give notice and provide the parties a reasonable opportunity to present any pertinent materials in opposition prior to deciding

the converted motion. *Brown v. U.S. Steel Corp.*, 379 F.App'x 152, 155 (3d Cir. 2011); *Wolk v. Westport Ins. Corp.*, 276 F. App'x 129, 132–33 (3d Cir. 2008). *See also Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 F.App'x 171, 175–76 (3d Cir. 2010)) (further citation omitted) (addressing motion to dismiss pursuant to Rule 12(b)(6)), and *White Consol. Indus., Inc.*, 998 F.2d at 1196–97) (addressing motion for judgment on the pleadings pursuant to Rule 12(c)).

"When confronting a potential conversion, moreover, the court must be careful to protect each party's rights, given the differences between Rule 12 and Rule 56 with regard to the scope of relevant evidence and the effect of disposition." *White v. Jewish Ass'n on Aging*, 2013 WL 5963128, *2 (W.D.Pa. 2013) (citing *Clay v. Dep't of Army*, 239 F.App'x 705, 706–07 (3d Cir. 2007) and *Rose*, 871 F.2d at 341)). Once the motion is converted to a motion for summary judgment, "reasonable allowance must be made for the parties to obtain discovery." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). Courts within the Third Circuit are less likely to convert a motion to dismiss "when little or no discovery has occurred." *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000) (citing *Brennan v. Nat'l Tel. Directory Corp.*, 850 F.Supp. 331, 335–36 (E.D.Pa. 1994)); *Childs v. Meadowlands Basketball Ass'n*., 954 F.Supp. 994, 997 (D.N.J. 1997) (court decides "to refrain from converting the . . . motion into a summary judgment motion" because the Court was unaware of "whether any discovery has taken place in this case"); *Brug v. Enstar Grp., Inc.,* 755 F.Supp. 1247, 1251 (D.Del. 1991) ("it would be inappropriate to convert the motion to dismiss into a motion for summary judgment . . . since there has been no discovery conducted in the present case.").

### E. The Forum Selection Clause

Noting that historically, forum selection clauses have not been favored by American courts, the United States Supreme Court held such clauses to be prima facie valid and enforceable absent a showing by the resisting party that enforcement would be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 9-10 (1972). Interpreting *Bremen*, the Court of Appeals for the Third Circuit held that:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir. 1983) (relied upon in *Wolfe v. TBG Ltd.,* 2014 WL 325637 (E.D. Pa. 2014)).

When a contract involves maritime commerce and transportation, and the dispute is not inherently local, federal law controls the contract interpretation. *Norfolk So. Ry. Co. v. Kirby*, 543 U.S. 14 (2004) (citing the two-step analysis from *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961)). In order to determine if a contract is a maritime one, courts

> cannot look to whether a ship or other vessel was involved . . . Nor can we look to the place of the contract's formation or performance. Instead, the answer "depends upon . . . the nature and character of the contract," and the true criterion is whether it has "reference to maritime service or maritime transactions."

*Kirby*, 543 U.S. at 24-25. While the "boundaries of admiralty jurisdiction over contracts - as opposed to torts or crimes - being conceptual rather than spatial, have always been difficult to draw . . .", a contract to insure a ship or its cargo is, plainly, a maritime contract. *Kossick*, 365 U.S. at 890 (citing *New England Mut. Marine Ins. Co. v. Dunham*, 11 Wall. 1, 78 U.S. 1, 14-15

(1870)). Plaintiff and the Sonigo/UniGroup/BestGuy Defendants entered into an agreement to transport Plaintiff's household property by sea from Israel to the United States, and then on to Pittsburgh by land. Atlas agreed to insure the shipping and safe delivery of Plaintiff's household furniture and goods. These agreements were maritime contracts.

General rules of contract interpretation govern maritime contracts, and these are "the core principles of the common law of contract that are in force in most states." *IAP Worldwide Serv., Inc. v. UTi United States Inc*., 2006 WL 305443, *7 (E.D.Pa. 2006) (citing *Am. Tel. & Tel. Co. v. M/V Cape Fear*, 967 F.2d 864, 873 (3d Cir. 1992). If the terms of the agreement are clear and unambiguous, they must be enforced as written. *Id*.

If, however, the language of the contract is ambiguous and is susceptible to more than one reasonable interpretation, the court may look to extrinsic evidence of the parties' intent such as their course of conduct throughout the life of the contract. *Id.* (citing *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) and *Hoyt v. Andreucci,* 433 F.3d 320, 331 (2d Cir. 2006)). Evidence of a prior course of dealing can establish a party's awareness of and consent to intended contractual terms. *Step-Saver Data Sys., Inc. v. Wyse Tech*., 939 F.2d 91, 103 n.40 (3d Cir. 1991); *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) (citing Restatement (Second) of Contracts § 223) (1979)).

### F. Resolution of Forum Selection Clause Issue is Premature

At this early stage of litigation, the Court simply does not have enough uncontradicted averments or unambiguous documents upon which to make an informed decision as to the existence of a valid forum selection clause or its effect. Atlas insists the forum selection clause is part of the insurance contract negotiated between it and Plaintiff's agent, Sonigo. Atlas' supporting documents, however, do not unambiguously support this assertion. Atlas attached to

15

its Brief in Support of Motion to Dismiss a Confirmation of Insurance form dated October 29, 2012, with Special Conditions providing for English Law to govern and Israeli courts to resolve disputes. Underneath the time stamp, a clause states: "This Certificate shall not be valid unless countersigned by," but there is no countersignature, only an illegible scrawl for Atlas.

Atlas also argues that Sonigo and Atlas "have years of business dealings wherein Sonigo negotiated insurance policies for their clients, contracts that always contained the same forum selection clause terms in the certificate of insurance." Atlas' Reply Brief (ECF No. 27), at 3. However, the Special Conditions in the sample form Confirmation of Insurance, attached as Exhibit E to Atlas' initial brief (ECF No. 20-5), provide that this "insurance is subject to English Law and Usage only and subject to British jurisdiction only . . .", which contradicts the language of Exhibit D. Because the two Confirmations have different material terms, the "course of dealings" with regard to forum selection and governing law clauses is ambiguous, and will require resort to extrinsic evidence. Atlas also attached Exhibit B, Agent's Instructions, to support its argument that Mr. Roman never intended to acquire insurance until he learned that Hurricane Sandy landfall was imminent, (ECF No. 20-2), but it is unclear and in dispute when he received these instructions.

Plaintiff argues the forum selection clause was not part of any contract he saw or executed, and that he always intended to apply for shipping insurance but his attempts were delayed by Sonigo's sending paperwork (Atlas' Application and Inventory form) to his employer's e-mail address. The Application and Inventory form, however, are not before the Court. Moreover, Plaintiff correctly observes that the documents offered by Atlas are ambiguous, are not indisputably authentic, and that Atlas has not demonstrated that Mr. Roman's claims are

based on any of these new materials so that this Court could consider them without converting the motion to dismiss to one for summary judgment.

The Court has insufficient information before it upon which to conduct meaningful evaluation and make an informed decision as to the existence and effect of a forum selection clause in Atlas' insurance contract. Therefore, the Court should decline to convert the motion to dismiss to a motion for summary judgment, and should deny the motion to dismiss and allow the case to proceed to discovery.

**III. Conclusion**

For the foregoing reasons, I recommend that the District Court deny Atlas Insurance LTD's Motion to Dismiss (ECF No. 19), without prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, Plaintiff is allowed until May 2, 2014, to file objections to this report and recommendation. Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Date: April 14, 2014

cc: all counsel of record